IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **ADEL A. KAMAL**, *et al.*,<br>　　Plaintiffs, | Case Number 3:13 CV 574 |
| 　　v. | Magistrate Judge James R. Knepp II |
| **CITY OF TOLEDO,**<br>**DEPARTMENT OF PUBLIC UTILITIES**,<br>　　Defendant. | MEMORANDUM OPINON AND ORDER |

### INTRODUCTION

Adel A. Kamal, ADKA Properties, LTD, and LAMAK, LLC, (collectively "Plaintiffs") brought this action on behalf of themselves and all persons similarly situated, alleging certain constitutional violations and federal and state law claims against Defendant the City of Toledo Department of Public Utilities ("the City"). The undersigned directed the parties to file "dispositive motions on the issue of water service as a property interest" before proceeding with full discovery or setting additional dates. (Doc. 12, at ¶11).

Following this Court's directive, the City filed a Motion for Summary Judgment requesting the Court find as a matter of law that Plaintiffs have no property interest for water services provided to them by the City. (Doc. 22). Plaintiffs filed a Response (Doc. 26), and the City filed a Reply (Doc. 28).

The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 11). For the reasons explained below, the Court grants the City's motion for partial summary judgment.

**FACTUAL BACKGROUND**

This case is before the Court pursuant to a motion for summary judgment; thus, any disputed facts are set forth below in the light most favorable to Plaintiffs. *Patterson v. Hudson Area Sch.*, 551 F.3d 438, 439 (6th Cir. 2009); *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001).

Plaintiffs owned at least eighteen properties within the City of Toledo and "most of the properties were rented and occupied by tenants." (Doc. 18, ¶¶12-13). Plaintiffs claim that prior to January 2012, those properties "had continuous potable water supplied to them via the city of Toledo's water service monopoly" and Plaintiffs "continually and regularly pa[id] off the invoiced water and related services" provided to the properties. (Doc. 18, at ¶¶15-16; Doc. 26-1, at ¶8). Plaintiffs further claim through Mr. Kamal's affidavit that "[i]n general, any and all invoices received [by Plaintiffs] for water, sewer or garbage services" were promptly paid. (Doc. 26-1, at ¶9). In January 2012, Plaintiffs claim the City began shutting-off water service to some properties without notice. (Doc. 18, at ¶17).

According to the City, Plaintiffs never had accounts for water service properly set up at any property and instead claim "water was being used at all locations listed in Plaintiffs' Complaint illegally without the [C]ity's knowledge and on more than one occasion after having been physically terminated for non-payment by the City." (Doc. 22-1, ¶¶5-6, 7, 9). In support, the City attached an affidavit from Doris Kalka, the utilities supervisor at the City of Toledo, Department of Public Utilities. (Doc. 22-1, at ¶5).

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show there is no

2

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Celotex*, 477 U.S. at 323.

Once the moving party meets this burden, the burden then shifts to the opposing party who "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." Fed. R. Civ. P. 56(e); *see also Vidovic v. Mentor City School Dist.*, 921 F. Supp. 2d 775, 790 (N.D. Ohio 2013). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams*, 154 F. Supp. 2d at 1071. However, "at the summary judgment stage the [Court's] function is not [] to weigh the evidence and determine the truth of the matter," *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried."

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Ultimately, the Court is tasked with "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact[.]" *Anderson*, 477 U.S. at 250.

However, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989). Rather, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## DISCUSSION

As part of their amended complaint, Plaintiffs allege they were deprived of Constitutional due process rights when the City terminated water service to several properties. At this juncture, the key issue is whether Plaintiffs have a property interest under the Fourteenth Amendment in water services provided by the City. The Court asked the parties to frame this issue in a partial motion for summary judgment, which if answered in the negative, would foreclose Plaintiffs' Constitutional due process claims raised in Count One of the amended complaint. (Doc. 18). In support of its Motion, the City assumes Plaintiffs' due process claims are procedural rather than substantive in nature; an assumption Plaintiffs do not refute.

To state a claim for failure to provide procedural due process, a plaintiff must allege: 1) existence of a life, liberty, or property interest protected by the Due Process Clause; 2) deprivation of this protected interest within the meaning of the Clause; and 3) that the state did not afford adequate procedural rights prior to depriving him of that protected interest. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009). In order for a plaintiff's claim to fall into the protection of the Fourteenth Amendment, he or she must first demonstrate a "legitimate claim of entitlement" to a "property interest". *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). For purposes of the analysis herein, the existence of a property interest is the only pertinent issue.

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Golden v. City of Columbus*, 404 F.3d 950, 955 (quoting *Roth*, 408 U.S. at 577).

In order to establish a "constitutionally recognized property interest in the benefit of water service," Plaintiffs must have more than an "abstract need", "desire", or "unilateral expectation" for water service. *Id*. "The Supreme Court has identified two bases for such non-unilateral legitimate claims of entitlement: state statutes and contracts, expressed or implied, between the complaining citizen and the state or one of its agencies." *Golden*, 404 F.3d at 955 (citing *Roth*, 408 U.S. at 577-78); *see also Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 11 (1978) (Customers of a utility must first establish an entitlement to the continued utility service arising from an independent source of state or local law, or by contract). Plaintiffs bear

5

the burden of proving they have a property interest created by statute or contract for water services provided to them by the City. *Golden*, 404 F.3d at 950.

Here, the City submits Plaintiffs have not acquired a property interest in City of Toledo water service because no contract for water services, either express or implied, existed between the City and Plaintiffs and no state law establishes such a right.[1] (Doc. 22, at 7-11).

In response, Plaintiffs argue a property interest in water services is created because: 1) the continuity of water services is essential and fundamental; 2) a contract existed between Plaintiffs and the City; 3) the City entered into a consent judgment entry creating a property interest in continuing water service; and 4) the extraordinary measures taken by the City against Plaintiffs in "killing" the water service effectively condemned the properties. (Doc. 26, at 6).

The instant discussion is best organized under the framework set forth by the Sixth Circuit and Supreme Court; namely, whether there is a property interest for the receipt of municipal water services created by: 1) state or local statute; or 2) by express or implied contract. *Golden*, 404 F.3d at 950. Any of Plaintiffs' unaddressed arguments will be analyzed thereafter.

### *Entitlement arising by statute*

In order to establish a property interest in water services through statute, a plaintiff must demonstrate an independent state or local law which explicitly creates a protectable right for all citizens to have water service that cannot be extinguished "at will" or without "just cause". *Craft*, 436 U.S. at 11 (finding the Due Process Clause applied to terminations of the plaintiffs' utility services because Tennessee common law prohibited public utilities from terminating utility service "at will," requiring instead "just cause" for the termination of a utility service); *Hargis v.*

---

1. The City also raises several peripheral arguments which are not relevant to the narrow issue before the Court. The Court makes no finding as to matters addressed in the parties' briefs but not addressed in this Memorandum Opinion and Order.

*City of Cookeville*, 92 F. App'x 190, 193 (6th Cir. 2004); *see also*, *Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008, 1017 (7th Cir. 2012); *Brown v. City of Barre, Vt.*, 878 F. Supp. 469, 489 (D. Vt. 2012) (collecting cases across circuits to find "a consensus that in order to establish a protected statutory interest in water service, a tenant must establish a statutory intent to provide water service to all users regardless of their status as property owners or tenants which is, in turn, protected by procedural mechanisms intended to prevent an erroneous deprivation of that interest for reasons other than unexcused nonpayment.").

In their Brief, Plaintiffs point to Ohio Revised Code § 4905.22, which sets forth:

Every public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the public utilities commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission.

R.C. § 4905.22.[2]

Simply stated, this statute does not confer a property interest in water supplied by the City to owners of residential property. Indeed, this statute does not create a protectable right for all citizens to have water service that cannot be extinguished "at will" or without "just cause". *Craft*, 436 U.S. at 11. Rather, it instructs that a municipality shall "furnish and provide" utilities and any charges therefor shall be "reasonable." For these reasons, R.C. § 4905.22 does not create the necessary property interest in water services.

---

2. Although not dispositive at this stage, the Court notes that the Ohio Supreme Court has held claims brought under this statute are within the exclusive jurisdiction of Public Utilities Commission. *State ex rel. Duke Energy Ohio, Inc. v. Hamilton County Court*, 126 Ohio St. 3d 41, 45-47 (Ohio 2010).

Next, Plaintiffs direct the Court to two Toledo Municipal Code sections, neither of which creates a protectable right for all citizens to have water service that cannot be extinguished "at will" or without "just cause". *Craft*, 436 U.S. at 11. To the extent Plaintiffs argue these municipal code sections create an implied contract with users of city water services, such a result does not reach Plaintiffs' situation, as described in the next section, below.

First, in their Complaint, Plaintiffs point to TMC § 933.07. (Doc. 18, at ¶15). TMC 933.07 sets forth:

> (a) Owners of real property shall be the only parties permitted to open and maintain active accounts with the Department of Public Utilities for water and/or sewer service to such property. This requirement shall not preclude an owner of real property from contracting for water and/or sewer service with the Department of Public Utilities through an authorized agent, provided that sufficient proof of a bona-fide agency relationship as required by the rules and regulations of the Department of Public Utilities is submitted along with the application for such service. This requirement shall affect contracts made on or after the effective date of this section.
>
> (b) All accounts in existence prior to the effective date of this section which were not contracted in the name of the owner of the serviced property will be permitted to remain in the name of the current contract obligor. However, upon cancellation or termination of such contract, all future contracts for the serviced property shall be made in accordance with subsection (a) hereof[.]

The Court does not find this section grants the type of "legitimate entitlement" needed to create a property interest because it does not establish a right for all citizens to water services or mandate that such services be terminated only for good cause. *Craft*, 436 U.S. at 11. On the contrary, this section confers the right to open and maintain an account for water services to owners and their agents, rather than establishing a right to services for all citizens. What is more, this section does not regulate termination procedures. For these reasons, TMC 933.07 does not create a property interest in water services.

8

Plaintiffs further argue that TMC, Part Nine, Title Three, Appendix C, § 101.03(A) creates an implied contract for services through the receipt of services. (Doc. 26, at 10). TMC, Part Nine, Title Three, Appendix C, § 101.03(A) states:

> Applicants for Utility Services must sign a contract document that, if it does not spell out in full all of the laws, rules, regulations, policies and obligations that apply to Customers, it shall be deemed to incorporate same by reference. Notwithstanding the foregoing, the absence of a signature to a contract and/or the acceptance and/or receipt of Utility Services shall still constitute a knowing and voluntary agreement by the recipient to be bound by all applicable laws, rules and regulations contained herein, in the ORC, TMC, or elsewhere, as may currently exist or as may be changed from time to time, including, without limitation, the cost of Utility Services. For the entire duration of accepting and/or receiving Utility Services, the applicant represents and warrants to the City and Department that the applicant is the lawful Owner of the Premises to receive Utility Services.

By its own terms, TMC § 101.03(A), applies to "applicants" for utility services. Moreover, this section does not create a protectable right for all citizens to have water service that cannot be extinguished "at will" or without "just cause". *Craft*, 436 U.S. at 11.

Plaintiffs take issue with the second sentence of the statute (beginning with "Notwithstanding…"), arguing it creates an implied contract between the City and anyone in receipt of water services. (Doc. 26, at 10). However, this section, entitled "Contract Required", simply protects the City against providing free water services to anyone who receives services without an account. In § 101.01 of Appendix C, the TMC sets forth, "the City and/or Department shall not provide Utility Services for free". In other words, while an implied contract for services could be created in some situations, such as where the City issues invoices and the recipient pays for water received, it does not create such a contract without further action. *See Brown*, 878 F. Supp. 2d at 487 ("[n]o court, including the United States Supreme Court in *Craft*, has recognized a protected property interest in *free* utility service."). Moreover, as described below, an implied

9

contract cannot create a due process property interest in water services unless Plaintiffs establish they had an account with the City.

In sum, Plaintiffs have not identified a state or local statute which creates a property interest in the receipt of water services by making water available for all users and prohibiting services from being terminated at will and requiring just cause. *Craft*, 436 U.S. at 11. Therefore, Plaintiffs have no legitimate claim of entitlement to water service under Ohio or municipal law.

### *Entitlement arising from contract, express or implied*

In support of their claim that a property interest is created by contract, Plaintiffs direct the Court to *Mansfield Apt. Owners v. City of Mansfield*, 988 F.2d 1469 (6th Cir. 1993). In *Mansfield*, landlords brought a § 1983 action against the city alleging its regulations holding landlords liable for delinquent water bills of their tenants violated procedural and substantive due process. The Sixth Circuit relied on *Craft* to find, "[i]t is well settled that the expectation of utility services rises to the level of a legitimate claim of entitlement encompassed in the category of property interests protected by the due process clause." *Mansfield*, 988 F.2d at 1474.

Subsequently, the Sixth Circuit narrowed the scope of *Mansfield*, because "the complainants in *Mansfield* were property owners who had accounts with the City of Mansfield's utility department[.]" *Golden v. City of Columbus*, 404 F.3d 950, 956 (6th Cir. 2005). Thus, the independent source of entitlement in *Mansfield* arose from the fact the plaintiffs were owners who "had accounts" with the city's utility department.

In this case, it is undisputed that Plaintiffs are owners, as opposed to tenants, of the relevant properties. There is also no dispute that an express contract for water services does not exist between Plaintiffs and the City. Indeed, the City claims "there exist no contract documents for water use at any of the properties Plaintiffs have listed in their Complaint, nor any evidence

of any legitimate authorization." (Docs. 22, at 9; 22-1, at ¶¶3-6). Plaintiffs do not deny the lack of a formal, or express, contract for services.[3] (Doc. 26, at 9-10). Thus, the dispositive issue here, in light of *Mansfield* and *Golden*, is whether Plaintiffs "had accounts" with the City through an implied contract.

While Plaintiffs' allegations must be taken as true, once the City puts forth evidence contradicting Plaintiffs' claims, Plaintiffs are required by the federal rules to put forth some probative evidence. Fed. R. Civ. P. 56(e). Plaintiffs cannot rest "upon the mere allegations or denials" of their pleading rather than setting "forth specific facts showing that there is a genuine issue for trial." *Id*. Upon review, the Court finds Mr. Kamal's affidavit is insufficient to create a genuine issue of material fact as to whether Plaintiffs had an account with the City to receive water services.

To this end, the City has presented evidence which demonstrates Plaintiffs did not follow the proper administrative procedure to establish an account for water services with the City at any of the relevant properties. (Doc. 22-1, ¶3-6). The City also put forth evidence to show Plaintiffs received water illegally at all relevant locations prior to the time of this lawsuit, although the Court notes the City did not claim *all* water was illegally received. (Doc. 22-1, at ¶ 9). Nevertheless, it is now Plaintiffs' burden to controvert the City's assertions.

By affidavit, Mr. Kamal testified that Plaintiffs previously had potable water supplied to their properties by the City. (Doc. 26-1, at ¶8). Mr. Kamal further averred "[i]n general, any and all invoices received . . . for water, sewer or garbage were promptly paid." (Doc. 26-1, at ¶9).

---

3. Although there is some dispute as to whether the City required contracts for services at the relevant time, this issue is not material because whether or not it was required, the facts are clear that no express contract for services existed. (Doc. 26-1, at ¶16).

However, this evidence is unavailing because it does not suggest Plaintiffs legally received water or established an account with the City through implied contract.

Indeed, Plaintiffs allege "continuous potable water [was] supplied to them" by the City. (Doc. 26-1, at ¶8). But, this is only a general assertion that water was received at the properties and does not specify whether water was received legally or illegally. Therefore, this evidence does not refute the City's claim that water was received illegally at all residences prior to this lawsuit.

Moreover, Plaintiffs have not produced any evidence to contradict the non-existence of an account for the City. The Court is underwhelmed with Plaintiffs' general, illusory statement regarding the "general" payment of "any and all" invoices for "water, sewer or garbage services." *Id*. In the event Plaintiffs never received a single invoice for water services, Mr. Kamal's sworn statement would still hold true. This bare statement does not set "forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

As a practical matter, Plaintiffs have not produced, or claimed the existence of a water bill or statement from the City with a balance due or account number. Plaintiffs have not produced a credit card statement, receipt, canceled check or any other evidence of a payment for water services. Undoubtedly, it would not be difficult to produce one piece of evidence from eighteen properties, and Plaintiffs have not said one way or the other why such evidence could not be located. Thus, the Court finds Plaintiffs have not established an account for water services existed with the City. It follows that *Mansfield*, which involved owners of a property with an established "account" for services, is inapposite to the case at bar. *Golden*, 404 F.3d at 956.

The Court notes that finding Plaintiffs have not established an implied contract with the City for water supply is consistent with cases decided by other circuits. To this end, in *Wayt*, the

12

Seventh Circuit found a plaintiff was an established customer with the city because she "had created an account for water service; she had been delinquent in payment for that service in the past; her service had been disconnected; she applied for reconnection; and her service was immediately reinstated upon receipt of all fees associated with reconnection." *Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008, 1019 (7th Cir. 2012). In light of these facts, the court found an implied contract for water service existed between the plaintiff and the city. *Id*. at 1021.

Here, unlike *Wayt*, there are no facts which show Plaintiffs created an account for water service, applied for reconnection, or paid fees associated with reconnection. Even resolving all inferences in favor of Plaintiffs, that they did receive water at the residences and "[i]n general" paid "any and all" invoices for "water, sewer or garbage" services, the Court cannot find an implied contract or account for services existed in light of the evidence put forth by the City; particularly that no account was ever set up by way of established administrative procedures and water was illegally received at every residence prior to the start of this lawsuit. Therefore, the holding in *Wayt* is factually distinguished from the case at bar.

Moreover, this decision is consistent with the Eleventh Circuit's holding in *James v. City of St. Petersburg*, 33 F.3d 1204, 1307 (11th Cir. 1994). There, the court found no property interest exists where the plaintiff and her landlord failed to comply with the city's administrative procedures to receive water services. The court held, "[b]ecause neither [plaintiff] nor her landlord complied with the [c]ity's requirements for initiating water service, which included the making of a security deposit, [plaintiff] had no legitimate claim of entitlement to water service under Florida law." *Id*. Considering whether users of water service have a property interest in continued service, the court found "no support 'for the proposition that there is a constitutional right to receive [utilities] when the applicant refuses to comply with reasonable administrative

13

procedures.'" *Id*. (quoting *Coghlan v. Starkey*, 845 F.2d 566, 569 (5th Cir. 1988); *Sterling v. Village of Maywood*, 579 F.2d 1350, 1353-54 (7th Cir. 1978)).

Here, the City has provided uncontroverted evidence that Plaintiffs did not follow administrative procedures to establish an account with the City. The City provided testimony of a City official and also examples of the contracts required by the City for water services in response to Plaintiffs' allegations that no contracts were required. Therefore, consistent with *James*, the Court finds Plaintiffs' failure to comply with administrative procedures precludes the existence of a property interest in water services through implied contract.

Last, Plaintiffs argue they had an implied contract for services from the City established by way of a consent judgment entry ("CJE") entered into by the City in the case of *McDowell v. City of Toledo*, Lucas County C.P. Case No. 89-1709. (*available at* Doc. 28-2). The CJE was issued in response to a lawsuit brought by four plaintiffs, including Ruby McDowell, against the City of Toledo after the city failed to provide tenants with notice before shutting off water services, either because the tenants did not have a contract for water services with the owner of a building or due to the owner's nonpayment. *McDowell v. Toledo*, 2011-Ohio-1842, at ¶¶9-10 (Ohio Ct. App.). The resulting CJE set forth procedures that the city must follow before terminating water services to a residence. (Doc. 28-2).

The CJE also granted a permanent injunction in favor of Ruby McDowell, "precluding the termination of water service for the lack of a contract or other written agreement for such services with the owner of the designated property." (Doc. 26-2, at ¶1). The injunction was "conditioned upon Ruby McDowell satisfying the quarterly water and sewer fees for said premises generated on a quarterly basis by Defendant, City of Toledo, in a timely manner." (Doc. 28-2, at ¶2).

14

Approximately twenty years later, a claimed third party beneficiary filed suit to enforce the CJE after his water services were terminated without notice. *McDowell v. City of Toledo*, 2011-Ohio-1842 (6th Dist. 2011). The Sixth District noted "[a] third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract." *Id*. (citing *Berge v. Columbus community Cable Access*, 136 Ohio App.3d 281, 303 (1999)). But,"[b]efore a third-party beneficiary can enforce that contract, however, the individual must be an intended beneficiary as opposed to merely an incidental beneficiary." *Id*. at ¶ 29 (cting *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St. 36, 40 (1988)). In light of this, the Sixth District affirmed the trial court's finding that the CJE was an "unambiguous contract" with respect to "parties like [the third party plaintiff]." *McDowell v. City of Toledo*, 2011-Ohio-1842 (6th Dist. 2011).

Although the Sixth District found the CJE applied to intended beneficiaries and not just the named parties to the action, it held the CJE precluded incidental beneficiaries from enforcing the CJE. In this regard, the Sixth District affirmed the trial court's finding that the Toledo Fair Housing Center was an incidental third-party beneficiary to the CJE, and as such, "had no enforcement rights under the CJE". *Id*. at ¶29. Thus, the CJE does not operate to create a promise to all potential third party beneficiaries in the City of Toledo, including those who were not intended beneficiaries to the CJE. *Id*. at ¶26.

For the following reasons, the Court finds Plaintiffs are not "parties like" the third party beneficiary. First, Plaintiffs have not shown they are intended beneficiaries to the CJE because they have not provided evidence to controvert the City's claims they never established an account with the City. Furthermore, Plaintiffs have not refuted the City's evidence of illegal water use. The Court declines to expand the effect of the CJE to create a due process property

interest in every resident of the City of Toledo; whether or not they have ever legally received water services, established an account with the City, or established themselves as intended beneficiaries to the agreement. Moreover, and in any event, the Court questions whether Plaintiffs can enforce the CJE as a nonparty without filing a motion to enforce the CJE under Ohio Rules of Civil Procedure 71.[4] For these reasons, the CJE does not operate to create an implied contract between Plaintiffs and the City for water services.

*Remaining arguments*

Last, the Supreme Court has made clear, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." *Roth*, 408 U.S. at 570-71 (quoting *Morrissey v. Brewer* 408 U.S. 471, 481 (1972)); *Sterling v. Maywood*, 579 F.2d 1350, 1354-55 (7th Cir. 1978) ("it is the nature, and not the weight or importance, of the plaintiff's interest that determines whether a property interest exists."). "Without evidence of a contractual relationship between [the plaintiff] and the [c]ity, or of a statutory entitlement to water service," procedural due process protection is not available. *Golden*, 404 F.3d at 956.

Accordingly, to the extent Plaintiffs argue they have a property interest in water services based on the importance of water services generally, or the City's act of "killing" their water services, those arguments are not well taken because a property interest in water services has not been established by statute or contract.

---

4. The Staff Notes to Rule 71, which mimics Federal Rule 71, describe the rule as "merely an enabling rule which allows orders in favor of and against persons not parties[]", "intended to eliminate the necessity of making persons technical parties to suits in order to reach a just and proper result[]", and does not "enlarge" substantive rights." Ohio Civ. R. 71.

## CONCLUSION

For the above-stated reasons, the Court finds as a matter of law that Plaintiffs have no property interest in water services provided by the City. Therefore, the Court grants Defendant's Motion for Summary Judgment and dismisses Count One, for violation of the Due Process Clause of the Fourteenth Amendment, from Plaintiffs' amended complaint.

s/James R. Knepp II<br>
United States Magistrate Judge